UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JULISA ARTIS, individually and on
Behalf of all others similarly situated,

    Plaintiff,

v.                                  Case No. 8:24-cv-2538-JLB-CPT

PLATINUM WEALTH VENTURE,
LLC d/b/a NEXT LEVE INSURANCE
DIRECT, and DAVID L. POTTER,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff Julisa Artis's amended motion for the entry of a default judgment against Defendants Platinum Wealth Venture, d/b/a Next Level Insurance Direct (Next Level), and David Potter. (Doc. 21). For the reasons set forth below, I respectfully recommend that Artis's amended motion be granted in part and denied in part.

I.

Artis initiated this action in October 2024 pursuant to the Fair Labor Standards Act (FLSA or the Act), alleging that her former employer, Next Level, and Next Level's owner, Potter, willfully violated the FLSA's overtime wage provision during

her tenure at the company.  (Doc. 1).[1]  In support of these allegations, Artis averred that she served as an insurance sales agent at Next Level between March 2023 and April 2024 and was paid on an hourly, non-exempt basis with a commission structure predicated on the insurance policies she sold.  *Id.* at 2, 6.  According to Artis, she worked more than forty hours per week during the period between October 15, 2023, and December 7, 2023, but did not receive any compensation for her extra labor.  *Id.* at 7.  Relying on these and other allegations, Artis asserted one count for unpaid overtime wages under the Act and requested compensatory damages, plus an equal amount in liquidated damages, along with attorneys' fees and costs.  *Id.*

After filing her complaint, Artis effectuated service of process on Next Level through its registered agent (Doc. 5) and on Potter, who accepted service on behalf of himself (Doc. 6).  When both Defendants failed to answer or otherwise respond to Artis's complaint, she obtained clerk's defaults against them.[2]  (Docs. 7, 8, 9).  Artis then moved for a default judgement, which the Court denied without prejudice because Artis's motion included a separate fee and costs motion as an exhibit.  (Docs. 12, 20).

The instant amended motion followed.  (Doc. 21).  By way of that submission, Artis asks that the Court enter default judgments against Next Level and Potter based

---

[1] Artis filed her complaint as a collective action (Doc. 1 at 10–14), but no other plaintiffs have since sought to join the lawsuit.

[2]  An attorney appeared on the Defendants' behalf after the entry of the clerk's defaults (Docs. 10, 11) but that lawyer later sought and obtained the Court's permission to withdraw as the Defendants' counsel of record (Docs. 14, 15).

on the uncontested allegations in her complaint and a declaration attached to her motion which addresses the issue of fees, costs, and damages. *Id.* Neither Next Level nor Potter responded to this filing.

In a subsequent Order, I pointed out to Artis that she did not properly serve her amended motion on the Defendants and that she also did not comply with the Servicemembers Civil Relief Act, 50 U.S.C. § 3901. (Doc. 22) (citations omitted). After Artis remedied these deficiencies (Docs. 25, 25-1), I heard oral argument on the matter, at which Artis made a number of concessions regarding her fee request. Artis's amended motion is now ripe for the Court's consideration.

## II.

Federal Rule of Civil Procedure 55(b) provides that where, as here, a clerk's default has been entered against a defendant, a plaintiff may apply to either the clerk or the court for the entry of a default judgment.[3] Fed. R. Civ. P. 55(b). Before awarding a default judgment, however, a court must "ensure that it has jurisdiction over the claims and parties." *Wagner v. Giniya Int'l Corp.*, 2020 WL 7774385, at *1 (M.D. Fla. Dec. 3, 2020), *report and recommendation adopted*, 2020 WL 7768949 (M.D. Fla. Dec. 30, 2020). Part of this inquiry requires a court to confirm that the defendants

---

[3] Rule 55 further states that where, as in this case, "the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application [for a default judgment] at least [seven] days before" a hearing on the motion. Fed. R. Civ. P. 55(b)(2). Artis confirmed at oral argument that she properly served the Defendants with both the requisite hearing notice and her amended motion for default judgment. *See also* (Doc. 25).

who are the subject of the default judgment have been correctly served with the complaint. *Opella v. Rullan*, 2011 WL 2600707, at \*4 (S.D. Fla. June 29, 2011) ("Insufficient or improper service of process cannot support the entry of a default judgment, even if the defendant has actual notice of the suit."), *report and recommendation adopted*, 2011 WL 13220496 (S.D. Fla. Aug. 9, 2011).

If jurisdiction is established, a court must then ascertain whether "there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The burden on the movant in this context is akin to the one borne by a party seeking to defeat a motion to dismiss for failure to state a claim. *Graveling v. Castle Mortg. Co.*, 631 F. App'x 690, 698 (11th Cir. 2015)[4] (per curiam) ("The requisite factual showing for a default judgment is similar to the factual showing necessary to survive a motion to dismiss for failure to state a claim.") (citing *Surtain*, 789 F.3d at 1244–45; *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.") (citations omitted). Thus, a court looks to see whether the complaint contains adequate factual averments, which—if accepted as true—state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

If a claim is properly pleaded, a court must then address the issue of damages. A court may conduct an evidentiary hearing on that question, Fed. R. Civ. P. 55(b)(2)(B), but need not do so where the sought-after damages constitute a liquidated sum, are capable of mathematic calculation, or "where all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (citation omitted); *see also Perry Ellis Int'l, Inc. v. URI Corp.*, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007) (observing that a court may grant statutory damages which are predicated "upon affidavits and other documentary evidence if the facts are not disputed") (citation omitted); *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (finding that a hearing was unnecessary where the plaintiff requested statutory damages and "attached detailed declarations with accompanying documentary evidence" to its motion for a default judgment). Resolution of the damages issue is ultimately left to a court's sound discretion. *Axiom Worldwide, Inc. v. Excite Med. Corp.*, 591 F. App'x 767, 775 (11th Cir. 2014); *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 912 (11th Cir. 2011) (per curiam).

Each of the above considerations—jurisdiction, liability, and damages—will be addressed in turn.

## A.

Under 28 U.S.C. § 1331, federal courts have original jurisdiction over all civil actions "arising under" the laws of the United States. 28 U.S.C. § 1331. Such laws include the FLSA. *Nicopior v. Moshi Moshi Palm Grove, LLC*, 375 F. Supp. 3d 1278, 1284 (S.D. Fla. 2019) ("There is no dispute that the [c]ourt has federal question

jurisdiction over [the p]laintiffs' FLSA claim.") (citing 28 U.S.C. § 1331).  I therefore find that the Court has subject matter jurisdiction over Artis's FLSA action.

I also find that the Court has personal jurisdiction over the Defendants.  The concept of personal jurisdiction is comprised of two distinct components: amenability to jurisdiction and service of process.  *Prewitt Enters., Inc. v. Org. of Petrol. Exp. Countries*, 353 F.3d 916, 925 n.15 (11th Cir. 2003) (quoting *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264 (5th Cir. 1983)).  "Amenability to jurisdiction means that a defendant is within the substantive reach" of the court's jurisdiction under the governing law, while service of process "is simply the physical means by which that jurisdiction is asserted." *DeMelo*, 711 F.2d at 1264 (citation omitted).

Here, according to Artis's complaint, Next Level is a Florida limited liability company with a principal address in Tampa, Florida.  (Doc. 1 at 5).  As such, it is amenable to the Court's jurisdiction.  *Demelo*, 711 F.2d at 1264; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (noting that a corporate defendant's place of incorporation and/or principal place of business is the "paradigm forum for the exercise of general jurisdiction").  Likewise, Potter is both a citizen and resident of Florida, and also oversaw the activities of Next Level in Florida (Doc. 1 at 6). *Goodyear*, 564 U.S. at 924.  Both Defendants thus fall within Florida's long-arm statute, *see* Fla. Stat. § 48.193, and the Court's jurisdiction over them comports with due process, *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 392 (11th Cir. 1988) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

With respect to service of process, the returns of service filed on the docket evidence that Next Level was appropriately served with the summons and complaint through its registered agent pursuant to Fla. Stat. § 48.062(2), and that Potter was personally served in accordance with Fla. Stat. § 48.031(1)(a).  (Docs. 5, 6); Fed. R. Civ. P. 4(k)(1)(A) (service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located").  Accordingly, personal jurisdiction over the Defendants is established.

B.

To trigger liability under the FLSA's overtime wage provisions, there must be a threshold showing that: (1) an employee-employer relationship existed between the parties during the relevant period; and (2) the plaintiff was "covered" by the FLSA during that time frame.  *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011); *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008) (per curiam) (citing 29 U.S.C. §§ 206, 207, 215).

Regarding the first requirement, Artis's allegations sufficiently demonstrate that she and the Defendants had an employee-employer relationship.  She avers—as described above—that she worked for Next Level as an insurance sales agent from March 2023 to April 2024.  (Doc. 1 at 2).  She also avers that Potter is the "founder, controlling owner, chief executive officer, chief financial officer, and chief compliance officer" of Next Level, who maintained "day-to-day operational control of the business" and "directed and controlled the day-to-day work of [Artis]."  *Id*. at 6, 8; *see*

7

*also Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013) ("[W]e have joined the 'overwhelming weight of authority' and held that 'a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'") (citations omitted); *Elwell v. Pierce N Tell, LLC*, 2014 WL 12617813, at *2 (M.D. Fla. Mar. 6, 2014) (deeming allegations that a company's owner and operator had direct supervisory responsibility over the plaintiff to be enough to state a cause of action under the FLSA against both the owner/operator and the company) (citing *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986)).

Relative to the second requirement, a plaintiff may establish that she is a "covered" employee by showing that: (1) she was engaged in commerce or in the production of goods for commerce (i.e., individual coverage); or (2) her employer was engaged in commerce or in the production of goods for commerce (i.e., enterprise coverage). *See* 29 U.S.C. § 207(a)(1); *Josendis*, 662 F.3d at 1298–99. For purposes of individual coverage, a plaintiff must:

> be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in [her] work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel.

*Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citing 29 C.F.R. §§ 776.23(d)(2), 776.24). And for enterprise coverage, a plaintiff must demonstrate that her employer:

(1) . . . has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person[,] and (2) has an annual gross volume of sales made or business done . . . not less than $500,000.

*Gaviria v. Maldonado Bros., Inc.*, 2014 WL 12531281, at *3 (S.D. Fla. Mar. 31, 2014) (internal quotation marks and citation omitted).  In the end, a plaintiff "need not do much to plead individual or enterprise coverage"—she need only aver the essence of her work, the nature of her employer's business, and an adequate connection between her work and interstate commerce.  *Harding-bey v. Pathways Therapy Servs., LLC*, 2021 WL 1894603, at *4 (M.D. Fla. Apr. 20, 2021) (quoting *Sims v. UNATION, LLC*, 292 F. Supp. 3d 1286, 1292 (M.D. Fla. 2018)), *report and recommendation adopted*, 2021 WL 1893968 (M.D. Fla. May 11, 2021).

Artis properly alleges both individual and enterprise coverage here.  She avers that her duties as an insurance sales agent included selling Medicare supplementary and ancillary policies for Next Level across state lines, as well as collecting and processing payments for insurance premiums across state lines, and that Next Level had annual revenues exceeding $500,000.  (Doc. 1 at 5–6).  These allegations—accepted as true given the clerk's defaults entered against the Defendants—are sufficient to establish both individual and enterprise coverage.

Once a plaintiff has demonstrated that both an employment relationship and coverage existed, the remaining elements of a FLSA violation are "quite straightforward."  *Labbe*, 319 F. App'x at 763.  All that "must be shown [is] simply a

9

failure to pay overtime compensation and/or minimum wages to covered employees[.]" *Id.* To do so, an FLSA overtime plaintiff need only plausibly allege enough facts that show she worked more than forty hours per week and that the defendant failed to pay her using the appropriate time-and-a-half rate for those additional hours. *Vega v. New Home Star Fla., LLC*, 2024 WL 1050564, at *4 (M.D. Fla. Mar. 11, 2024) (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008)) (internal citation omitted).

Artis satisfies these pleading requirements here. She avers in her complaint, as noted above, that while she was employed by Next Level, she worked more than forty hours a week during the eight-week Annual Enrollment Period (AEP) from October 15, 2023, to December 7, 2023, and that the Defendants failed to remit her the overtime monies to which she was entitled for this time frame. (Doc. 1 at 7). These allegations, coupled with Artis's other averments detailed above, establish the Defendants' liability with respect to Artis's FLSA claim.

## C.

On the matter of damages, Artis attests in her declaration that she worked an average of twenty-four overtime hours per week for the first seven weeks of the AEP and eight overtime hours for the last week of AEP.[5] (Doc. 21-1). Artis attests as well that her regular hourly pay rate was $22, which yields an overtime hourly wage of $33.

---

[5] This estimate is based on Artis's averment that the Defendants required her to work from 9:00 a.m. to 8:00 p.m., Monday through Friday, and from 10:00 a.m. to 2:00 p.m. on Saturdays. (Doc. 21-1).

*Id*.  Taking these figures together, I find that Artis is owed $5,808 in overtime compensation, and—given her uncontested allegations that the Defendants willfully violated the FLSA—an equal sum in liquidated damages, for a total of $11,616.  *See Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008) ("Under the FLSA[,] a district court generally must award a plaintiff liquidated damages that are equal in amount to actual damages."); *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987) (noting that liquidated damages must be awarded "absent a showing of good faith") (citation omitted); *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) ("[L]iquidated damages are mandatory . . . [under the FLSA] unless the [c]ourt makes an explicit finding of good faith.") (citations omitted).  I also find that an evidentiary hearing on this issue is unnecessary since the above amounts are the result of a mathematic calculation and are substantiated by the record.  *See Smyth*, 420 F.3d at 1232 n.13; (Docs. 21, 21-1); *see also Clough v. McClure Constr. Co., LLC*, 2019 WL 1559661, at *2 (M.D. Fla. Mar. 25, 2019) ("A plaintiff may establish his or her damages by affidavit.") (citing *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)), *report and recommendation adopted*, 2019 WL 1558667 (M.D. Fla. Apr. 10, 2019).

## III.

### A.

As referenced earlier, Artis additionally seeks an award of attorneys' fees for the services performed by her counsel, Mitchell Feldman and Jason Quintus, during the course of this lawsuit.  (Doc. 21 at 19, 22, 23).  Artis represents in this respect that

Feldman and Quintus devoted a total of 44.35 hours to prosecuting this case (20.65 hours by Feldman and 23.70 hours by Quintus), and that their hourly rates are $500 for Feldman and $400 for Quintus. (Doc. 21-2 at 10). To buttress her fee request, Artis includes with her motion a declaration from Feldman, in which he sets forth his qualifications and expertise in the areas of employment and FLSA litigation. *Id.*

After careful review, I find Artis's fee request to be justified in part. Several considerations lead me to this conclusion. To begin, a survey of FLSA actions in this District reveals that the prevailing hourly rates for lawyers with experience comparable to that of Feldman and Quintus are not as high as Artis maintains. According to this case authority, a reasonable hourly rate in an FLSA case for counsel with Feldman's background is in the neighborhood of $400–$425. *See, e.g., Coleman v. JCS Investigations & Security LLC*, 2025 WL 2694990, at *4 (M.D. Fla. Aug. 28, 2025) (reducing a partner's hourly rate in an FLSA action from $600 to $425), *report and recommendation adopted as modified*, 2025 WL 2989963 (M.D. Fla. Oct. 23, 2025); *Vega v. Friends of Dolphins, LLC*, 2024 WL 5294270 (M.D. Fla. Dec. 5, 2024) (reducing the hourly rate for counsel with twenty-nine years' experience from $650 to $400 in an FLSA case resolved via a default judgment) (collecting cases), *report and recommendation adopted*, 2024 WL 5232830, at *3-4, (M.D. Fla. Dec. 27, 2024); *Hernandez v. Drop Runner LLC*, 2023 WL 8720197, at *2 (M.D. Fla. Nov. 21, 2023) (approving an hourly rate of $400 for a lawyer with more than twenty years' experience) (collecting cases), *report and recommendation adopted*, 2021 WL 8716602 (M.D. Fla. Dec. 18, 2023). The decisional law in this District likewise indicates that the prevailing hourly rate in an FLSA action

for an associate-level attorney like Quintus, who was admitted to the bar in 2014 (Doc. 21 at 23), is in the range of $250–$375. *See, e.g., Egan v. Affordable Mechanics of Am., Inc.*, 2024 WL 2261588, at *4 (M.D. Fla. Jan. 11, 2024) ("Courts in the Middle District routinely find hourly rates between $250 and $375 reasonable for associate-level attorneys in FLSA cases") (collecting cases), *report and recommendation adopted*, 2024 WL 2261522 (M.D. Fla. Jan. 26, 2024).

At oral argument, I discussed with these fees opinions with Feldman. In response, Feldman agreed to reduce his hourly rate to $425 and to lower Quintus's hourly rate to $325. I find these adjusted rates to be adequately supported based on the above case authority, as well as my own knowledge and experience in addressing fee matters.

In addition to the above concerns regarding Feldman's and Quintus's hourly rates, there are problems with the 44.35 hours they claim as well. For one, the billing records upon which these hours are grounded contain duplicative entries, as well as several unreasonable charges, such as .6 hours logged to review two one-page clerk's defaults. (Doc. 21-2 at 16). For another, the billing records include vague entries that are hard to decipher, along with instances where "block billing" is used. *See id.* This latter practice, which involves "combin[ing] into one block different entries for different type[s] of work," *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1375 (M.D. Fla. 2010), is "disfavored" by the courts because "'it makes it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task,'" *Alicea v. Peter's Plumbing, Inc.*, 2025 WL 3006051, at *5 (S.D. Fla.

Oct. 15, 2025) (quoting *ACLU of Ga. v. Barnes*, 168 F.3d 423, 429 (11th Cir. 1999)); *see also Provitola v. Comer*, 2024 WL 4803216, at *4 (M.D. Fla. Nov. 15, 2024) ("Simply put, [b]lock-billing is inappropriate."), *aff'd*, 2025 WL 2779939 (11th Cir. 2025).

At a broader level, it appears that the amount of time documented in Feldman and Quintus's billing records significantly exceeds the number of hours lawyers typically expend in FLSA actions, especially ones where default judgments are obtained. *See, e.g., Stevens v. Cosmic Strands, LLC*, 2025 WL 948992, at *4 (M.D. Fla. Mar. 30, 2025) (approving 22.7 hours in a default judgment FLSA action); *Vega*, 2024 WL 5294270, at *10 (approving 16.3 hours); *Baez v. B&B of Fowler, Inc.*, 2021 WL 1854560, at *8 (M.D. Fla. May 10, 2021) (approving 14 hours). This includes FLSA cases handled by Feldman and Quintus themselves. *See Jackson v. Creation Maintenance Inc.*, 2024 WL 1494306, at *6 (M.D. Fla. Feb. 21, 2024) (approving 26.19 hours for Feldman and Quintus in an FLSA case that culminated in a default judgment).

Where, as here, a court finds that the number of hours spent by counsel is unreasonably high, "the court has two choices: it may conduct an hour-by-hour analysis, or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citation omitted); *see also Galdames v. N & D Inv. Corp.*, 432 F. App'x 801, 806 (11th Cir. 2011) ("If the court concludes that the number of claimed hours is excessive, it may engage in 'an across-the-board cut,' so long as it provides [an] adequate explanation for the decrease.") (quoting *Bivins*, 548 F.3d at 1350). At oral argument, I discussed my reservations

about the billing records with Feldman, and he acknowledged that an across-the-board cut of 35% was proper.  This modification brings the number of hours reasonably spent on the litigation to 13.42 hours for Feldman and 15.40 for Quintus for a total of 28.82 hours.[6]

Multiplying these revised time calculations by Feldman's and Quintus's amended hourly rates, I recommend an award of attorneys' fees in the sum of $10,708.50, as set forth in the table below.

| Attorney | Hourly Rate | Reasonable Hours Expended | Fees |
|---|---|---|---|
| Mitchell Feldman | $425 | 13.42 | $5,703.50 |
| Jason Quintus | $325 | 15.40 | $5,005 |

B.

As mentioned previously, Artis also requests that she permitted to recoup the costs she has paid in pursuing this action.  Federal Rule of Civil Procedure 54(d) provides that costs "should be allowed to the prevailing party" unless a federal statute, federal rule, or court order dictates otherwise. Fed. R. Civ. P. 54(d)(1).  This rule creates a presumption in favor of awarding costs to the winning litigant.  *Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001) (citation omitted).

---

[6] I reduced the hours billed by Feldman and Quintus proportionately.

15

The costs to be granted pursuant to Rule 54 are not without limits, however. Instead, a district court ordinarily may not award costs to a prevailing party unless they are specified in 28 U.S.C. § 1920. *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)).

In this case, Artis seeks an award of $499.20 in total costs. (Docs. 21, 21-2). This figure is comprised of the $405 filing fee and $94.20 in service of process charges. *Id.* To bolster her request, Artis submits supporting documentation and directs the Court's attention to the docket entries which evidence she incurred these expenses. *Id.*

It is well settled that filing fees are taxable as "fees of the clerk" under section 1920(1). *See Tweedie v. Waste Pro of Fla., Inc.*, 2021 WL 5843111, at *10 (M.D. Fla. Dec. 9, 2021) (noting that filing fees constitute taxable costs under section 1920(1)) (citations omitted); *Zainulabeddin v. Univ. of S. Fla. Bd. of Trustees*, 2017 WL 2215675, at *1 (M.D. Fla. May 19, 2017) (same) (citation omitted). The same is true for service of process fees, provided they do not surpass the statutory limit set forth in section 1921, which represents the allowable rate assessed by the United States Marshals Service. *See Beach-Mathura v. Am. Airlines, Inc.*, 571 F. App'x 810, 812–13 (11th Cir. 2014) (per curiam) (reversing a district court's award of service of process fees that was greater than the sanctioned rate under section 1921); *W&O, Inc.*, 213 F.3d at 624 ("[A] district court does not abuse its discretion in taxing private process server fees that do not exceed the statutory fees authorized in [section] 1921."). The Marshal's Service is currently authorized to charge $65 per hour for each item personally served, plus travel

16

costs and other out-of-pocket expenses. *See* 28 C.F.R. § 0.114(a)(3). The party seeking taxation bears the burden of proving entitlement to these enumerated costs. *Loranger v. Stierheim*, 10 F.3d 776, 784 (11th Cir. 1994) (per curiam).

Artis has met her burden here. The record before the Court reflects that she paid the filing fee (Doc. 1), and that she also incurred the claimed charges associated with service of process on Potter and Next Level (Docs. 5, 6); (Doc. 21-2 at 19–20). Because these expenses are recoverable under section 1920, I recommend that the Court award Artis $499.20 in taxable costs.

IV.

In light of all the above, I recommend that:

1. Artis's *Amended Motion for Default Judgment and Attorney Fees and Costs* be granted in part and denied in part as described herein (Doc. 21);

2. A default judgment be entered in Artis's favor and against Next Level and Potter on Artis's FLSA overtime claim in the total amount of $11,616;

3. The Court grant Artis attorneys' fees in the amount of $10,708.50 and costs in the amount of $499.20; and

4. The Court instruct the Clerk of Court to close the case following the entry of the default judgment.

Respectfully submitted this 25th day of January 2026.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

17

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable John L. Badalamenti, United States District Judge
Counsel of record